Assuming, however, that such transfer was without his free consent, and was against his will, and was, as claimed by plaintiff's counsel, a removal from a higher to a lower grade, and illegal, his remedy was to apply for reinstatement by mandamus, before suit for salary can be maintained. Sutliffe v. City of New York, 132 App. Div. 831, 117 N. Y. Supp. 813.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

(142 App. Div. 339.)

FELDMAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 25, 1911.)

1. RAILROADS (§ 376*)—INJURY TO PERSONS ON TRACK—DUTY AS TO TRESPASSERS.

Where trespassers are walking on a railroad bridge in disregard of their own safety and in defiance of Railroad Law (Laws 1890, c. 565, as amended by Laws 1892, c. 676, now Consol. Laws 1910, c. 49, § 83) § 53, the company has no right to intentionally, recklessly, or wantonly injure them.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1279; Dec. Dig. § 376.*]

2. RAILROADS (§ 376*)—INJURY TO TRESPASSERS ON TRACK.

Where an engineer of a train has discovered a person on the track in a position of peril, he is required to use reasonable care and diligence to avoid injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1279; Dec. Dig. § 376.*]

3. RAILROADS (§ 400*)—INJURY TO TRESPASSERS ON TRACK.

A person trespassing upon a railroad bridge is not negligent as a matter of law so as to defeat a recovery, where the proximate cause of his injury was the engineer's reckless negligence.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 400.*]

4. RAILROADS (§ 398*)—INJURY TO TRESPASSERS ON TRACK—EVIDENCE.

Evidence, in an action to recover for the death of a trespasser on a railroad bridge, held sufficient to sustain finding that the defendant's engineer did not use reasonable care to stop the train and avoid a collision after seeing such trespasser.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1377–1381; Dec. Dig. § 398.*]

McLennan, P. J., and Robson, J., dissenting.

Appeal from Trial Term, Oneida County.

Action by Emma Feldman, as administratrix of Pauline Crossman, deceased, against the New York Central & Hudson River Railroad Company. From a judgment of the Supreme Court in favor of plaintiff and against defendant for damages and costs, the defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles T. Titus, for appellant.
George W. Driscoll, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

KRUSE, J.  Plaintiff's intestate and her husband were walking along the defendant's railroad track.  They came to a bridge, went upon it, and when nearly across were overtaken by a train and killed.  It must be conceded at the outset that in walking upon the track they did so not only in disregard of their own safety, but in defiance of the penal law of this state.  Railroad Law, § 53 (Laws 1890, c. 565, as amended by Laws 1892, c. 676, now Consol. Laws 1910, c. 49, § 83).  But, although they were trespassers, the defendant had no right to intentionally, recklessly, or wantonly injure them.  Keller v. Erie R. Co., 183 N. Y. 67, 75 N. E. 965.

The trial court charged, and the law seems to be and is so conceded by appellant's counsel, as I understand his position, that, after the engineer discovered the peril to the deceased, he was required to use reasonable care and diligence to avoid injuring her.  Remer v. Long Island R. Co., 36 Hun, 253; Id., 48 Hun. 352, 1 N. Y. Supp. 124, affirmed Id. 113 N. Y. 669, 21 N. E. 1116; Neuberger v. Long Island R. Co., 131 App. Div. 885, 116 N. Y. Supp. 311; White v. N. Y. C. & H. R. R. R. Co., 20 N. Y. Supp. 6.[1]

It is argued, however, on behalf of the railroad company, the defendant, that the evidence is insufficient to sustain the finding that the defendant's engineer did not use reasonable care to stop his train and avoid the collision.

After the plaintiff had rested and she was about to be nonsuited, the engineer was called and sworn as a witness in her behalf.  By his testimony it appears that he discovered the persons upon the track ahead of him when he was a thousand feet from the bridge, but he was unable to determine at first that they were on the bridge.  He blew the whistle, the persons stopped, turned around, looked toward the train, and started to run.  He then concluded that they were on the bridge and in danger, and, as he claims, immediately did everything he could to stop the train, applying the emergency brake, sanding the track, and blowing the whistle continuously.  The persons were then about two-thirds of the way across the bridge, and the bridge was about 370 feet long.

The plaintiff rests upon the engineer's testimony as to how far away the persons were when he first discovered them on the track, but contends that the engineer did not stop his train as soon as he could after he knew that the persons were on the bridge and in a perilous situation.  That contention is based upon the testimony of other witnesses and the surrounding circumstances.  The engineer testified that between the time he first discovered the persons on the track and when he concluded that they were on the bridge was about five seconds, and that the train was going at the rate of about a mile a minute.  Going at that rate the train would go about 440 feet, leaving it then about 560 feet from the bridge.  But the testimony of other witnesses indicates that the train was going but 25 to 35 miles an hour, which would leave the train about 300 feet farther

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 65 Hun, 621.

away from the bridge, and the train could be stopped within 600 or 700 feet.

The persons were struck at about the west end of the bridge, and the engine was stopped about 400 or 500 feet or even farther beyond that point. There is also testimony to the effect that the brakes were not applied until at about the time the engine struck the bridge, and then only lightly, and again and with more force when the train was about halfway across the bridge. It is therefore argued that the engineer did not apply the brakes as soon as he discovered that the persons were unable to escape from their perilous situation, and that he failed to exercise reasonable care to avoid the collision, and that such failure was in wanton and reckless disregard of the duty which he owed to the deceased, although she was a trespasser.

I confess that I have some doubt that the engineer was at fault within the rule to which I have adverted. There is much force in the suggestion that at most he erred in judgment. It seems almost incredible that he would continue to drive his engine heedless of the peril of the persons upon the bridge, with the knowledge or belief that they could not escape in time to avoid the collision. But I must say that if the testimony of the engineer as to when he discovered that the persons were upon the bridge and in danger is true, and his testimony as to what efforts he thereafter made to stop his train, is discarded as unreliable, and that of the other witnesses for the plaintiff taken as true, the finding of the jury that the engineer was reckless is not without support.

But it is said that, although the jury found that the deceased was free from contributory negligence, she was negligent as a matter of law in going upon the bridge, and, therefore, that alone is sufficient to prevent a recovery. That conclusion does not necessarily follow. If the engineer was reckless and her entry upon the bridge was not a proximate, contributing cause to the collision which resulted in her death, the defendant may still be liable. As has been seen, when the deceased entered upon the bridge the train was not in sight, and she was unaware of its approach. When she was halfway or more across the bridge, the engineer saw her. He blew the whistle. She became aware of the approach of the train. She ran. The engineer knew her peril. His train overtook her and caused her death. He had no right, under such circumstances, to drive his engine ahead regardless of consequences. Human life was at stake, and he was required to use reasonable care to avoid the collision, even to stop his train if necessary; and, if he did not, his conduct was reckless, and the defendant is liable notwithstanding the fact that the deceased was a wrongdoer in going upon the bridge and a trespasser up to the very time that she was struck.

It should also be stated, in this connection, that the charge relating to contributory negligence seems to be satisfactory to the defendant, as no criticism is made of it and no exception taken thereto on the trial.

The judgment and order should be affirmed, with costs. All concur, except McLENNAN, P. J., and ROBSON, J., who dissent; Mc-

LENNAN, P. J., dissenting on the ground that as matter of law plaintiff's intestate was guilty of contributory negligence, and that, therefore, under the authority of Rider v. Syracuse Rapid Transit Railway Co., 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125, defendant was not liable because of the failure of its engineer to exercise ordinary care and prudence, which was the only issue submitted to the jury bearing upon defendant's negligence.